# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**LEE MIDDLETON ORIGINAL
DOLLS, INC.**,

        Plaintiff,

v.                                        **Case No. 01-C-1291**

**SEYMOUR MANN, INC.**,

        Defendant.

## DECISION AND ORDER ON PLAINTIFF'S MOTION FOR ATTORNEY FEES AND COSTS

On July 23, 2004, following a jury trial, the court entered judgment in favor of the plaintiff, Lee Middleton Original Dolls, Inc. ("LMOD") against the defendant, Seymour Mann, Inc. ("Mann"). The jury found that Mann's "My Special Angel" doll infringed on plaintiff's copyrighted sculpts in violation of the Copyright Act. The jury awarded statutory damages in the amount of $30,000.00, but declined to find that the defendant acted willfully. The court entered judgment dismissing the plaintiff's claims involving alleged infringement of trade dress, dilution of trademark, and unfair competition, and did not submit these to the jury.

Following the verdict, LMOD moved for the entry of a permanent injunction and both parties requested an award of attorney fees. On March 18, 2005, this court issued its decision granting plaintiff's motion for the entry of a permanent injunction. The court also granted plaintiff's motion for an award of attorney fees and costs under the Copyright Act. Finally, the court denied defendant's request to limit

plaintiff's fees pursuant to Rule 68, Fed. R. Civ.P. and also denied the defendant's motion for attorney fees under the Lanham Act. The court gave the defendant an opportunity to respond to the plaintiff's previously submitted petition for attorney fees and costs. The defendant has now submitted its response to plaintiff's petition and the plaintiff has filed its reply. The matter of plaintiff's attorney fees and costs is now ready for resolution.

As stated in the court's prior decision, under the Copyright Act, a court may "award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. Since the court has determined that the plaintiff has satisfied the "prevailing party" requirement, the only issue is the "reasonableness and necessity" of the fees and costs requested. The defendant's basic challenge to the fees requested is based on the fact that the plaintiff did not prevail on all of its claims. The plaintiff's complaint raised three causes of action, which were violations of the Copyright Act, unfair competition and violations of the Lanham Act. The defendant argues that the plaintiff actually raised seven claims, if you take into consideration the five separate copyright claims, plus the two Lanham Act claims. Whether it counts as an additional "claim," the defendant also views the plaintiff's attempt to prove a willful violation of the Copyright Act as a separate and distinct effort, in which it did not prevail.

Regardless of the manner in which the claims initially asserted by the plaintiff are counted, the defendant's method of challenging the amount claimed by the plaintiff for attorney fees is a proportionate attack. In other words, since the plaintiff only prevailed on one of its seven claims, it should be award only one-seventh of the amount claimed; or, in the alternative, since the plaintiff only prevailed on one of its three causes of action, it should be awarded only one-third of the amount claimed. The defendant relies on this approach and eschews challenging the specific entries in plaintiff's billing records. "With respect to the specific time entries in Plaintiff's billing records, Defendant does not believe that it is necessary or

2

fruitful to conduct a line-by-line critique of the bills, with two notable exceptions, . . ." (Defendant's Response of April 14, 2005 at 6).

In recognition of the fact that it did not prevail on all of its claims or causes of action, the plaintiff has engaged in its own method of discounting. Attached to it initial motion for attorney fees is the affidavit of lead counsel David Hanson. Hanson states that as of the final day of trial, LMOD had incurred attorney fees in the amount of $259,183.13. Hanson then goes on to state that, "[a]fter deducting amounts clearly attributable to claims and issues other than LMOD's copyright claim, the total attorney fees were $232,459.88." (Affidavit of David Hanson at par. 2). The detailed billing records appended to Hanson's affidavit as Exhibit A clearly indicate the entries that were deducted from the total by Hanson.

With the exception of the willfulness issue and the number of copyright violations, it is apparent that both parties agree that any time devoted to claims other than the Copyright Act violation should be deducted from the award. The question is the manner in which the court should go about paring down plaintiff's request: should it use the defendant's proportionality approach or accept the plaintiff's discounting? Before the court addresses that matter, a word about the time devoted to the Copyright Act violations, including the issue of willfulness.

The defendant submits that there was "never any real dispute that the dolls were similar, which is why the defendant immediately stopped selling them." (Defendant's Response at 4). If this were the case, why was it necessary for the plaintiff to go through trial to prove that the dolls were similar? After the court issued its decision on summary judgment stating that there would be only one work subject to a claim of infringement instead of five, why did the defendant continue to oppose the issue of similarity, if the "real dispute" was willfulness? In fact, at trial, the defendant requested that the infringement claim be dismissed as a matter of law and also submitted an instruction on infringement. This occurred despite the fact, as

3

pointed out by plaintiff, that in their respective testimony, both defendant's expert Eric Blome and its CEO Gideon Oberweger acknowledged a "striking similarity" when comparing the sculpts. The fact of the matter is that the defendant put the plaintiff to its proof, and as a result, the plaintiff had no other choice but to fully prosecute its case. In this regard, the fact that the plaintiff was limited to establishing that there was only one work being infringed, i.e., the doll as a whole, as opposed to separate infringements of the various copyrighted body parts, the proof would have been substantially the same. Furthermore, as will be discussed later, plaintiff's counsel has deducted from the total request, time devoted to the issue of "number of copyrighted works."

In regard to the nature of the defendant's violation of the Copyright Act, the plaintiff was unable to persuade the jury that the defendant's infringement was willful. However, an analysis of the record in this case discloses that the issue of willfulness was substantially subsumed into the time and effort the plaintiff was required to expend in pursuing the Copyright Act violation. Except for a slight expenditure of additional time, such as discussing the issue in opposition to summary judgment, preparing a jury instruction or arguing this matter to the jury, plaintiff would have prosecuted this case in a similar manner. In fact, as again, pointed out by plaintiff, the jury awarded the maximum amount of statutory damages. It is very likely that this was a result of not only the striking similarity between the two sculpts, but the fact that Oberweger should have known of such similarity. While the jury did not find that Oberweger acted in reckless disregard of plaintiff's rights, it certainly did not buy defense counsel's argument that Oberweger was simply a victim of plaintiff's zealousness in pursuing this litigation. Here again, plaintiff's counsel has deducted from its request, time devoted to the issue of willfulness.

4

Turning to the non-prevailing issues, the court is not persuaded by the defendant's proportionality approach. While limiting the award to either one-third or one-seventh of the total submitted has appeal from an ease of application, this approach is too arbitrary and does not comport with the prosecution of this case. For defendant's approach to have merit, each issue pursued in this case would have to be distinct and equal in regard to the amount of time devoted to each, with no overlap. This is simply not the case. A review of the facts and the billing records shows that the issues are not susceptible to the simplistic compartmentalization urged by defendant. Parenthetically, the trade dress, unfair competition and dilution of trademark issues did not fall out of the case until after the plaintiff's presentation of evidence at trial, when the court granted the defendant's motions for judgment.

The court now returns to the question of how much should be deducted from plaintiff's request? Since the court will not use the defendant's approach, should plaintiff's analysis of the appropriate discount be accepted? It might be argued that the defendant has, in effect, accepted the plaintiff's approach by declining to engage in a line by line critique of the billing records. A reasonable inference to be drawn from this is that, if the defendant fails on its primary challenge, except for two exceptions specifically noted, it does not dispute the reasonableness of the charges listed. On the other hand, it is still the court's responsibility to approve attorney fees, and the defendant's argueable default should not be substituted for the court's judgment.

The court has reviewed the billing records submitted by the plaintiff. Except for the items of the contingency fee arrangement and computerized legal research, which will be discussed separately, there is nothing that strikes this court has unreasonable or unnecessary. The hourly rates for attorneys and paralegals set forth in Hanson's affidavit are reasonable. The time deducted by the plaintiff as representing time devoted to non Copyright Act issues appears appropriate. The remaining time appears reasonable and

5

necessary. In light of the defendant's failure to raise specific challenges, the court does not find it necessary to engage in further discussion of this matter. Furthermore, the amount claimed by the plaintiff cannot be said to be excessive or unreasonable, when defense counsel has indicated that a similar amount has been expended in defense of this case. (Defendant's Post Trial Brief, August 16, 2005 at 19).

Turning to the specific challenges, the defendant first raises the matter of the contingent fee arrangement between LMOD and its attorneys. Although a copy of the contingent fee arrangement has not been submitted, according to plaintiff's attorney, under the formula contained in the agreement, only if the court would award less than $4,848.00 in fees, would LMOD pay any of the contingent amount, which is $34,634.00. Plaintiff's counsel sets out additional fee scenarios, one of which indicates that if the fee award exceeds $68,207.00, the attorneys are entitled to the full contingent amount. In light of the court's determination, and according to counsel's explanation, the contingent fee arrangement does not affect the fee award.

The next challenge concerns the cost for computerized legal research in the amount of $7,119.75. The defendant submits that this should be viewed as a cost of doing business or normal business expenses that should not be passed on to clients. The plaintiff cites the case of Uniroyal Goodrich Tire Company. v. Mutual Trading Corporation, 63 F.3d 516 (7th Cir. 1995), for the proposition that the cost of computerized legal research is includable for purposes of awarding attorney fees and costs. In Uniroyal, the defendant objected to this item of cost, arguing that such expense is better characterized as normal business overhead, in the same manner as maintaining a law library. The Seventh Circuit rejected this argument and permitted the inclusion of such cost. Id. at 526. The reasoning underlying the position of the Seventh Circuit is set forth in the case of Haroco, Inc. v. American National Bank and Trust Company of Chicago, 38 F.3d 1429 (7th Cir. 1994). Here, the court stated that computerized legal research

6

costs "are more akin to awards under attorney's fees provisions than under costs," because "the added cost of computerized research is normally matched with a corresponding reduction in the amount of time an attorney must spend researching." Id. at 1440. See also, Invessys, Inc. v. McGraw-Hill Company, 369 F.3d 16, 23 (1st Cir. 2004), in which the court held that computerized legal research should be treated similarly and reimbursed under attorney fees statutes like the Copyright Act. See, 17 U.S.C. § 505. Therefore, the defendant's challenge to characterize this cost as a mere business expense will be rejected.

One final matter is that the plaintiff has not included in its petition for attorney fees and costs, the fees and costs associated with preparing the petition and litigating the matter in court. In plaintiff's reply brief of April 21, 2005, plaintiff states that it will submit an affidavit from counsel setting forth this additional request. A party entitled to attorney fees is also entitled to be reimbursed for the time devoted to preparing such a request. The court will give plaintiff an opportunity to supplement its petition.

In conclusion, the court will award plaintiff the sum of $232,459.88 in attorney fees and $25,692.96 in costs, together with whatever additional amounts the court deems reasonable for attorney fees and costs in regard to the preparation and litigation of the petition. Counsel for plaintiff shall submit a supplemental affidavit for same no later than **June 8, 2005.** The defendant may respond no later than **June 15, 2005.** Thereafter, the court shall enter a final order awarding attorney fees and costs and direct that the judgment be amended accordingly.

SO ORDERED.

Dated at Milwaukee, Wisconsin, this 1st day of June, 2005.

s/AARON E. GOODSTEIN
United States Magistrate Judge